(Del. Rev.12/98)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

Velia Rodriguez
_____
(Name of Plaintiff or Plaintiffs)

v.   CIVIL ACTION NO. 07-390

MBNA/Bank of America
_____
(Name of Defendant or Defendants)

## COMPLAINT

1. This action is brought pursuant to Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §621 / ADA of 1991, 42 U.S.C. §12112(a) Americans with Disabilities Act of 1991
(Federal statute on which action is based)

for discrimination related to Age, Disability, Other Disability Perceived jurisdiction exists by virtue of
(In what area did discrimination occur? e.g. race, sex, religion)

ADEA, 29 U.S.C. §621 et seq, ADA, 42 U.S.C. §12112(a) et seq
(Federal statute on which jurisdiction is based)

2. Plaintiff resides at 66 Mercer Drive
(Street Address)
Newark  New Castle County  De  19713
(City)   (County)           (State) (Zip Code)
302- 731-1566
(Area Code) (Phone Number)

3. Defendant resides at, or its business is located at 1100 North King Street
(Street Address)
Wilmington  New Castle County  De  19801
(City)      (County)           (State) (Zip Code)

4. The alleged discriminatory acts occurred on 12, 10, 2005
                                              (Day) (Month) (Year)

5. The alleged discriminatory practice ☒ is  ☐ is not continuing.

EEOC

6. Plaintiff(s) filed charges with the <u>U.S. Equal Employment Opportunity Com</u>
   (Agency)
   <u>21 South 5th St    Philadelphia         PA   19106</u>
   (Street Address)   (City)   (County)   (State) (Zip)
   regarding defendant(s) alleged discriminatory conduct on: <u>10-12-2005</u>
   (Date)

7. Attach decision of the agency which investigated the charges referred in paragraph 6 above.

8. Was an appeal taken from the agency's decision?   Yes ☐   No ☑
   If yes, to whom was the appeal taken? _____

9. The discriminatory acts alleged in this suit concern: (Describe facts on additional sheets if necessary)

   <u>Submitted Bill of Particulars</u>

10. Defendant's conduct is discriminatory with respect to the following:
    A. ☐ Plaintiff's race
    B. ☐ Plaintiff's color
    C. ☐ Plaintiff's sex
    D. ☐ Plaintiff's religion
    E. ☐ Plaintiff's national origin

    Age, Retaliation, Disability, Other - perceived Disability

11. Plaintiff prays for the following relief: (Indicate the exact relief requested)

Monetary compensation for pain & suffering, also for wrongful termination; In the amount of $300,000.00

An apology for causing me so much grief & embarrassment

Reinstatement of my job at the level of pay I had at time of wrongful termination

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 6-18-07

_Delia Rodrig_____
(Signature of Plaintiff)

## BILL OF PARTICULARS

I.   **Jurisdiction**: I, Velia Rodriguez, was employed at Respondents' Newark office from April 27, 1992 to February 2, 2006, most recently as an Account Manager and a Lead Customer Satisfaction Specialist.

II.  **Charging Party's protected class(es)**: Disability, Perceived Disability, Retaliation.

III. **Adverse employment actions(s)**: Disciplinary action and Discharge.

IV.  **Brief statement of allegations**:

1. This is a claim of age discrimination, disability discrimination, perceived disability discrimination, and retaliation arising from my discharge less than four months after I reported to Personnel Generalist Michele C. Johnson that my boss, Vice President and Business Area Director Greg Stout was discriminating against me because of my real or perceived disability.

2. I am a 57 year old Hispanic female who was diagnosed with Lymphadema ("my disability") by Dr. William Bilski of Newark, Delaware in 2003.

3. I was employed from April 27, 1992 to February 2, 2006, most recently as an Account Manager and a Lead Customer Satisfaction Specialist, Employee Grade 220, on the 9:30 p.m. to 7:30 a.m. shift in Respondents' Customer Satisfaction Department.

4. During my more than thirteen years with Respondents, I received various awards and commendations including, but not limited to a Risk Detection Commendation on June 1, 1999, Most Improved Specialist for the 3rd Quarter of 1999, Star of the Week on January 26, 2004, and Customer Advocate Commendations from July of 1998 to 2005.

5.  Most of my semi-annual evaluations rated my performance as Excellent.

6.  For my last evaluation dated October 27, 2005, my performance was rated as meets expectations, and I earned a pay raise. In fact, I earned a pay raise for each of my semi-annual evaluations.

7.  Since 2003, as a result of my disability, the veins in my legs collapse, and my legs fill with fluid which makes it difficult and sometimes impossible for me to walk. I have to use compression pumps to transport the fluids in my legs to my bladder. I also have to wear compression stockings on my legs.

8.  In February of 2003, my disability became so severe that I needed to take a short term disability leave.

9.  I eventually returned to work in May of 2003 without repercussions from my then manager, David Michael.

10. Then in early 2005, Vice President and Business Area Director Greg Stout, a white male in his late 40's with no known disabilities or perceived disabilities became my new boss.

11. Again in May of 2005, my disability became so severe that I needed to take a short term disability leave.

12. I eventually returned to work in late August of 2005, and resumed working on the telephone in October of 2005.

13. Because I worked the night shift, like many of my co-workers, I occasionally rested my head at my cubicle during my lunch breaks.

14. Yet after I returned from disability leave, between October of 2005 and February of 2006, Greg Stout began targeting me for discipline and ultimately termination of employment.

15. Specifically, one night when I was resting my head at my cubicle during my lunch break, he told me, "Having your head down tells me you can't take the work at night."

16. I explained to him that I was taking a "power break" by simply resting my head on my own time during my lunch break.

17. Nevertheless, each time we met in his office, Stout threateningly said to me, "I'm worried about you."

18. Each time he said this, I asked him, "Are you worried about my job performance?"

19. Each time Stout would respond, "No, I am just worried about *you*."

20. Stout also expressed to me his belief that people who rest usually do so because they are sick.

21. Stout did not criticize, discipline, or discharge my similarly situated younger co-workers who also rested their heads during breaks but who were younger than me and not disabled or perceived to be disabled.

22. Eventually on October 12, 2005, Stout issued me a First Warning for allegedly falling asleep on the job which allegedly was in violation of Personnel Policy 601.

23. That same day, I made an oral internal complaint to Personnel Generalist Michele C. Johnson that Stout was discriminating against me based on my disability or perceived disability by falsely accusing me of sleeping on the job and targeting me for unjustified discipline.

24. Then less than one month later, in November 4, 2005, Stout issued me a Plan for Success allegedly in accordance again with Personnel Policy 601.

25. Then on December 15, 2005, just ten days before Christmas and just one week before I was scheduled for vacation, Stout issued me a Final Warning, dated December 6, 2005, again allegedly for falling asleep on the job allegedly in violation of Personnel Policy 601.

26. I told him that he was discriminating against me and making my blood pressure increase.

27. In response, Stout told me that I would be fired.

28. My last day at work was December 22nd or 23, 2005. At that time, I used earned vacation days for the last week of the calendar year.

29. In January of 2006, when my vacation ended, Stout placed me on Administrative Leave.

30. That same month, I informed Personnel of co-workers who actually were sleeping on the job, and I requested to speak with Respondents' board of directors.

31. Respondents denied my request. In essence, I was told to just worry about myself because it was none of my business what other similarly situated co-workers (who were younger but not disabled or perceived to be disabled and who did not oppose unlawful discrimination in the workplace) were allowed to do without repercussion.

4

32. On February 2, 2006, Personnel Generalist Michele C. Johnson sent me a letter informing me that Stout had terminated my employment retroactive to February 1, 2006, for allegedly falling asleep on the job in violation of Personnel Policy 601.

33. In reality, I never slept on the job. I rested my head at my cubicle during my lunch breaks.

34. However, similarly situated younger employees who were neither disabled nor perceived to be disabled and who did not oppose unlawful workplace discrimination, including Katrina Hatfield, a white female in her late 30's; Donna Pesce, a white female in her late 30's; Joanne Tyre, a white female in her late 30's; Christine Bennett, an African-American female in her 30's; Phyllis Meadows, a white female in her early 40's; and Chris Bennett, an African-American male in his 40's, all rested their heads at their cubicles as I did.

35. These aforementioned similarly situated younger employees who were neither disabled nor perceived to be disabled and did not oppose unlawful workplace discrimination also put blankets over their heads during their breaks, fell asleep, and asked co-workers to wake them up when their breaks ended.

36. Yet, Stout and Respondents never disciplined or discharged any of these similarly situated younger employees who were neither disabled nor perceived to be disabled and who did not oppose unlawful workplace discrimination.

37. I have been discriminated against by being disciplined and ultimately discharged because of my age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and my disability or perceived disability in violation of the Americans With Disabilities Act of 1991 ("ADA"), 42 U.S.C. § 12112(a) et seq.

38. I also have been retaliated against for opposing unlawful discrimination in violation of the Americans With Disabilities Act of 1991 ("ADA"), 42 U.S.C. § 12112(a) et seq.

39. Any alleged legitimate non-discriminatory reasons offered by Respondents for the difference in treatment between me and my similarly situated younger co-workers who were neither disabled nor perceived to be disabled and who did not oppose unlawful workplace discrimination is a pretext for discrimination because of age, disability, perceived disability, and retaliation.

40. The natural probative force of the evidence demonstrates discrimination and retaliation. Alternatively, a reasonable fact finder could choose to disbelieve any non-discriminatory reasons offered by Respondents because I can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Respondents' explanation that make it unworthy of belief.

41. My wage package with Respondents included an annual salary of $52,000 plus overtime pay; vested pension; 401(k) plan with employer contributions; medical, dental, vision, life, short and long term disability insurance and other benefits.

42. As a direct and proximate result of the actions of Respondents and its agents, I am suffering lost wages and earnings; reduced vested pension benefits; lost 401(k) plan participation, and employer contributions thereto; lost medical, dental, vision, life, short and long term disability insurance and other benefits; decreased employment and earning opportunities; emotional distress with the physical manifestation of hair loss; and other pecuniary and non-pecuniary losses.

V. **Respondents' explanation**: Allegedly falling asleep on the job allegedly in violation of Personnel Policy 601.

VI. **Applicable law(s)**: ADEA, ADA.

VII. **Other specific reasons for alleging discrimination:**

43. No similarly situated younger employees who were neither disabled nor perceived to be disabled and who did not oppose unlawful workplace discrimination were treated similarly to me.

44. Respondents discharged me less than one month after its successor, Bank of America announced massive layoffs of approximately 6,000 employees in approximately January of 2006. Respondents never replaced me.

45. Respondents have no written policy that expressly prohibits resting at one's work station on one's own time during one's lunch break

_Velia Rodriguez_ (signature)
**Velia Rodriguez**

10-17-06
**Date**

RODRIGUEZ, VELIA/Pleadings/Bill of Particulars

EEOC Form 161 (10/96)                U.S. **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Velia Rodriguez<br>66 Mercer Drive<br>Newark, DE 19713 | From: Equal Employment Opportunity Commission<br>Philadelphia District Office<br>The Bourse<br>21 S. Fifth Street, Suite 400<br>Philadelphia, PA 19106-2515 |

[ ]  *On behalf of person(s) aggrieved whose identity is*
     *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2007-00518 | Legal Unit | (215) 440-2828 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[ ]  We cannot investigate your charge because it was not filed within the time limit required by law.

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not **be collectible.**

On behalf of the Commission

_/s/ Marie M. Tomasso_   March 21, 2007

Enclosure(s)          Marie M. Tomasso, District Director          *(Date Mailed)*

cc:  MBNA America Bank
     John M. LaRosa, Esquire (For Charging Party)
     Karen Bahr, VP Advice & Counsel Case Manager (For Respondent)

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 07-390

# ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___1___ COPIES OF AO FORM 85.

___JUN 1 9 2007___  ___Harry Tucker___
(Date forms issued)       (Signature of Party or their Representative)

___HARRY TUCKER___
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action